### E. W. FAUCETTE v. LUDDEN & BATES.

*Pleading—Failure to Reply to Counter-Claim—Waiver of Judgment on Counter-Claim—Breach of Contract—Damages.*

1. Plaintiff, in an action in which defendants set up a counter-claim, failed to reply thereto and defendants prayed judgment absolute, but did not except to the refusal of judgment or to the order of reference then made; *Held*, that the defendants, by such failure to except, waived the right to judgment on their counter-claim for want of a reply.

2. Where, in an action by the consignee of goods for commissions on sales, the defendants set up a counter-claim alleging that they are endamaged in a certain sum by plaintiff's violation of an agreement not to sell any goods except those of the defendants, the proper judgment, in case of a failure of plaintiff to reply to such counter-claim, is by default and enquiry and not a judgment absolute for the sum demanded in the counter-claim.

3. Where, in an action by a consignee to recover commissions on sales, the defendants alleged by way of counter-claim that plaintiff had violated his agreement not to sell any goods except those of the defendants and to diligently push the sale of the latter, and it appeared that plaintiff had sold some goods other than those of defendants to three parties to whom he could not have sold defendants' goods and there was no proof that he had neglected defendants' business; *Held,* that, no damage having been proven, defendants could not recover for the breach of contract.

CIVIL ACTION, heard before *Greene, J.,* at March Term, 1895, of DURHAM Superior Court, on exceptions to report of a referee.  The facts sufficiently appear in the opinion of Associate Justice MONTGOMERY.  From a judgment for the plaintiff defendants appealed.

*Messrs. Boone, Merritt & Bryant,* for plaintiff.
*Messrs. Shepherd, Manning & Foushee* and *Perrin Busbee,* for defendants (appellants).

MONTGOMERY, J.:  The contract between the plaintiff's assignor and the defendants obligated him to sell musical instruments for them and not to sell any pianos or organs except those of the defendants, and to receive his remuneration in commissions on the sales.  The goods were consigned to the plaintiff's assignor in Durham and kept by him in his own sales-rooms.  After the contract was terminated, the plaintiff's assignor claimed that the defendants owed him, under its terms, a specified amount as commis ions on sales made by him, and sold and assigned in writing to the plaintiff.  The defendants having refused to pay the amount, the plaintiff brought this action to recover it.  The defendants deny the material allegations of the complaint, and set up a further defence in the nature of a counter-claim in which they aver that the plaintiff's assignor violated his contract with them in that he sold, during the

continuance of the contract, pianos and organs other than those of the defendants and received commissions on such sales ; and they aver their damages to be $500, and demand an absolute judgment for that amount against the plaintiff. At the trial term an order of reference was made to W. A. Guthrie, referee, "to take and state the account between the plaintiff and defendants upon the plaintiff's claim and the defendant's counter-claim and set off, and to report the evidence and his findings of fact and conclusions of law." The defendants filed no exceptions to the order of reference and went into the investigation of the plaintiff's account and of the matters in which they alleged damages under their counter-claim.    A report was made by the referee in which he found that the defendants were indebted to the plaintiff in the sum of $348.09 with interest as stated in his report.    Exceptions were taken and filed to nearly all of the findings of fact and conclusions of law.

There was sufficient evidence to support all of the findings of fact and they will not be disturbed.    Two of the referee's conclusions of law which were excepted to by the defendants bring up all that is necessary for a proper determination of the whole matter.    The first one was the referee's refusal to give the defendants judgment absolute for the $500 damages which they claimed in their counter-claim and insisted they were entitled to because of the plaintiff's failure to reply thereto.    The motion for this judgment was made by the defendants at the close of the testimony.    The ruling of the referee is sustained.    The defendants filed no exception to the ruling of his Honor when judgment absolute was demanded before him and refused on the counter-claim.    Neither, as we have said before, did they make exception to the order of reference. If it be conceded (which it is not necessary to do) that the counter-claim was drawn with sufficient certainty and that

FAUCETTE *v.* LUDDEN.

it was a proper plea against the plaintiff, the right to a
judgment upon it was waived and abandoned by the sub-
sequent conduct of the defendants.    The matters between
the parties were investigated by the referee upon the con-
struction of the order that the reference was to ascertain
the true relation between the parties, i. e. how stood the
account, as to commissions between plaintiff's assignor and
the defendants, and what actual damages the defendants
had sustained by reason of the matters set out in the coun-
ter-claim.    The defendants went into the investigation,
without exception to the order, and conducted it on their
part with that view.    In that aspect it is too late after all
the testimony was in for them to renew this motion for
judgment absolute.    Moreover, the defendant's counter-
claim is a cross-action against the plaintiff and its state-
ment of the cause of action and the relief demanded is
governed by the same rules which apply to the complaint.
If a complaint should allege a breach of contract without
setting out that the contract provides for the payment
absolutely or upon a contingency of a sum or sums of
money fixed by the terms of the contract or capable of
being ascertained therefrom by computation, and no answer
is filed, the proper judgment is one by *default and enquiry*.
*Code*, Sec. 385.    Surely, the defendants in this case, whose
counter-claim is as general as one could be and which does
not even furnish the means of ascertaining damages for a
breach of any of its provisions, are in no better condition
than the plaintiff in the case last mentioned.   Even where
the action is in the nature of assumpsit for goods sold and
delivered and there has been no express and specific prom-
ise to pay an agreed price for them, the judgment must
be one of default and enquiry, no answer being in.    93 N.
C., 388.

The second conclusion of law which we find it neces-

sary to consider is that the referee refused to allow, as a set off to the amount which he found due to the plaintiff, the amount of the profits made by the plaintiff's assignor in the sales made by him of other iustruments than the defendants', as the damages which they had sustained by reason of the breach of contract complained of.

It was incumbent on the defendants to show they had been damaged and to what extent and in what particulars. The contract itself contains no method of ascertaining damages for breach of its provisions. The damages which the defendants aver they have suffered proceed from a violation of the restriction contained in the first article of the contract which is in these words: "Consignee shall diligently push the sale of the said instruments by all proper means and will not sell, deal in, or be concerned in the sale of any piano or organ except those of said consignor." This must not be considered as a restriction on trade. The purpose of the defendants must be construed to be not that they intended or desired to suppress competition and to break down and destroy the interests of others in their line of business, but to require of the plaintiff's assignor a diligent attention to his business in selling their goods and the honest and faithful endeavor to sell their wares whenever it could be done. There are many general rules for estimating damages for breach of contract, but after all the circumstances and conditions surrounding each particular case make it difficult often to apply them, or any of them. One of the general rules laid down is that "the amount should be what would have been received if the defendant had kept his contract." Now, in applying this rule to the case before us, what would the defendants have been entitled to under their contract more than they had received on account of the plaintiff's assignor having sold three instruments other than their

FAUCETTE *v.* LUDDEN.

own, on which he made a profit of $220 ? . To answer this, the facts must be inquired into. It appears that no complaint during the existence of the contract was ever made by the defendants against the plaintiff's assignor for neglect or bad faith in the conduct of the business. Murray, the plaintiff's assignor, testified that he could not have sold the instruments of defendants to the parties to whom he sold instruments of other dealers ; and the testimony of the plaintiff is substantially to the same effect. There was no other testimony on this point. The defendants introduced a letter to them from the plaintiff's assignor in which the writer states that although he had sold a few instruments of other make than the defendants, yet "your business did not suffer, for it was pushed even more than I had done previously ; and, as an evidence that we were pushing your goods, every piano you had here was out on trial when Mr. Wiley reached here (when the contract was terminated), and we had organs out all 'round trying to sell them." From this testimony and the construction which we have put upon the contract we are of the opinion that the defendants, while the contract was violated in the letter, are not entitled to damages because none were proved.

There was no error in the findings of the referee and none in the judgment of the court pronounced upon them, and the same is                          Affirmed.